# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Linda Bryant,** ) | **Case No. 2:15-cv-4786-RMG-MGB** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Commissioner, Social Security Admin.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Plaintiff, through counsel, seeks judicial review of an unfavorable final administrative decision denying benefits on her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the assigned United States Magistrate Judge for review pursuant to Local Civil Rule 73.02(B)(2)(a) and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' briefs, administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision should be **affirmed**, based on the following proposed findings of fact and conclusions of law:

## I. Relevant Statutory Law

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are disabled within the meaning of the statute. 42 U.S.C. § 423(a). The "plaintiff for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Under the SSA, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations set forth a five-step sequential process that considers a plaintiff's age, education, and work experience in addition to the plaintiff's medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, the plaintiff "(1) must not be engaged in substantial gainful activity, i.e., currently working; and (2) must have a severe impairment that (3) meets or exceeds the listings of specified impairments, or is otherwise incapacitating to the extent that the plaintiff does not possess the residual functional capacity ["RFC"] to (4) perform [the plaintiff's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The plaintiff bears the burden of production and persuasion through the fourth step. If the plaintiff reaches step five, the burden shifts to the government to provide evidence that other work exists in significant numbers in the national economy that the plaintiff can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). The present case was resolved at step four.

## II. Background

The facts have been extensively set forth in the ALJ's decision (AR 9-22) and in the parties' briefs (DE# 7, 8), and need only be summarized here. Plaintiff was born October 1, 1961 and was age 45 ("younger") on the alleged disability onset date of January 30, 2007. See 20 C.F.R. § 404.1563 (defining "younger" as age 18-49). The Commissioner notes that on Plaintiff's 50th birthday on October 1, 2011, Plaintiff was an individual "approaching advanced age." (DE# 7 at 6). Plaintiff had insured status through December 31, 2012. (DE# 6-2 at 10). Plaintiff graduated from high school and completed one year of college. She has past relevant work experience as an administrative assistant/specialist (1997-2007). (AR 37, 90). She is married and lives with her husband. (AR 35, 154). She testified that her mother also lives with them. (AR 36).

For her activities of daily living, Plaintiff reports that she cares for her own hygiene and grooming, cooks meals, washes dishes and puts them away, does light laundry with breaks, reads,

watches television, and attends church. (DE# 6-2 at 22; AR 19, 37, 46-47). She has a driver's license and drives a car several times a month. (DE# 6-2 at 20; AR 19, 36). She is able to walk, handle her own finances and pay bills, take her medication without reminders, and follow written and verbal instructions. (*Id*.).

On April 11, 2012, Plaintiff filed an application for DIB benefits, alleging disability as of January 30, 2007, due to alleged lumbar spinal stenosis, post laminectomy syndrome, peripheral neuropathy, meralgia paresthetica,[1] restless leg syndrome, arthritis, and bone spurs in the elbow. (AR 90). Plaintiff's application was denied initially and on reconsideration. (AR 6-2 at 10). Upon Plaintiff's request, the administrative law judge ("ALJ") scheduled a hearing. The ALJ ordered multiple independent medical reviews by state agency physicians. (See AR 63-65, review by Dr. Darla Mulaney, M.D., 9/2012; AR 78-79, review by Dr. Robert Kukla, M.D., 3/2013) and multiple consulting examinations (AR 763-75, 767-70, examination by Dr. Mitchell H. Hegquist, M.D., 1/29/2012; AR 358-63, examination by Dr. Howard Bledsoe, M.D., 8/31/2012).

At the administrative hearing on June 11, 2014, Plaintiff (represented by counsel) and a vocational expert ("VE") both testified. Plaintiff indicated she had worked as an administrative assistant/specialist from 1997 to 2007. The VE testified that such work is classified at the "light" exertional level. The ALJ posed a hypothetical question to the VE that incorporated all the Plaintiff's restrictions found credible. The ALJ asked the VE to consider a hypothetical person of Plaintiff's "age, education, and past job experience" and to assume that such person would be limited "to light work, with standing and walking two hours in an eight hour day, sitting for six

---

[1] Meralgia paresthetica is a condition "characterized by tingling, numbness and burning pain in your outer thigh. . . . Tight clothing, obesity or weight gain, and pregnancy are common causes of meralgia paresthetica . . In most cases, meralgia paresthetica can be relieved with conservative measures, such as wearing looser clothing." See http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition.

hours in an eight hour day, occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional balancing and stooping, no kneeling, crouching, or crawling." (AR 53). The ALJ's hypothetical question also included the environmental restriction of avoiding machinery and heights, and the postural restriction of no "overhead reaching to the left with the right upper extremity." (*Id*.; AR 6-2 at 14, Finding 5).[2]

In response, the VE testified that Plaintiff could perform her past work as an administrative assistant under such hypothetical. (AR 54). Additionally, the VE testified that Plaintiff could perform other jobs, such as: 1) addresser (sedentary unskilled, with 2,000 jobs regionally and 100,000 jobs nationally); and 2) quotation clerk (sedentary unskilled, with 4,000 jobs regionally and 100,000 jobs nationally). (AR 54). The ALJ posed a more restrictive hypothetical question, but those restrictions were not found credible. (AR 55).

## III. The ALJ's Decision

On September 22, 2014, the ALJ issued a decision denying benefits. (AR 9-22). The ALJ determined that Plaintiff had "severe" impairments ("status post L5-S1 lumbar microdiscectomy secondary to DDD of the lumbar spine, status post arthroscopic surgery to the right shoulder secondary to DJD, DJD of the knees, bilateral hip bursitis, and bilateral epicondylitis with arthritis of the left elbow"), but that they were not of listing-level severity.[3] (AR 11, Findings 3 and 4). See 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d), 1525, 1526.[4]

---

[2] The ALJ explained to the VE that the person "can reach overhead straight up but can't reach over to their left." (AR 53).

[3] "DDD" refers to degenerative disc disease, and DJD refers to degenerative joint disease.

[4] The ALJ found that some alleged impairments, such as hyperlipidemia and hypothyroidism, were non-severe. Such conditions were well-controlled with medication and did not cause any significant functional limitations. (AR 11, Finding 3). *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). As for alleged neuropathy and meralgia paresthetica, nerve conduction studies repeatedly yielded normal results and showed no sensation loss, the neurologist did not diagnose neuropathy, and Plaintiff admittedly took no medication for meralgia paresthetica. (AR 12).

The ALJ considered Plaintiff's functional abilities and determined that Plaintiff had the RFC to perform a range of light work within certain restrictions. (AR 13, Finding 5). The ALJ found that Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms could reasonably be expected to cause most of the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (AR 14). The ALJ discussed the treatment records, medical findings, and Plaintiff's daily activities. (AR 14-19). The ALJ also considered the opinions of the state agency medical consultants (AR 20, citing Exs. 1A, 4A), the consulting examiner reports (AR 20, citing 6F, 26F, 27F), the 2012 and 2014 assessments by Plaintiff's pain management provider (AR 20-21, citing 5F, 9F, 37F), and the 2013 and 2014 assessments by Plaintiff's primary care provider (AR 20, citing Exs. 12F, 36F). In light of all the evidence, including the hearing testimony, the ALJ determined that Plaintiff retained the ability to perform her past "light" work as an administrative assistant. (AR 21, Finding 6). The ALJ concluded that Plaintiff was not disabled from the alleged onset date (January 30, 2007) through the date of decision (September 22, 2014). (AR 22, Finding 7). The Appeals Council denied further review. (AR 1-3). The ALJ's decision is the Commissioner's final decision.

## IV.  Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial

evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996). The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id.*; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## V. Discussion

### A. The Medical Evidence

The ALJ considered the medical evidence at considerable length. (AR 14-21). In 2007, Plaintiff complained of back pain and was treated with periodic steroidal injections. (AR 488, 601, 604). At a September 2007 visit, Plaintiff's doctor found "mildly limited" lumbar range of motion ("ROM"), but normal hip and knee ROM, no sensory deficits, and good motor strength. (AR 523). In November 2007, Plaintiff underwent a microdiscectomy at L5-S1. (AR 578).[5] Plaintiff did well, had some "mild back pain, but nothing significant," and her leg symptoms were "much improved." (AR 520, 580). She continued to improve, and her physician recommended a "simple exercise program." (AR 564, "she is doing much better…her motor strength is 5/5 in all the major muscle groups"). In December 2007, Plaintiff's motor strength was normal, and she reported a 50%

---

[5] Microdiscectomy is defined as "a minimally invasive surgical procedure in which a portion of a herniated nucleus pulpolsus is removed by way of a surgical instrument or laser while using an operating microscope or loupe for magnification."  See https://en.wikipedia.org/wiki/Discectomy.

reduction in hip pain. (AR 596). In January 2008, Plaintiff continued to report improvement in her back pain, but indicated her leg had been painful the last three days. (AR 585-587).

In August 2008, Plaintiff complained of some knee pain, but examination revealed no loss of ROM, no tenderness, no sensory deficit, and no gait abnormality (AR 653). X-rays of her right knee showed "minimal" osteoarthritis. (AR 663, 694-95). Plaintiff continued to seek pain management in 2008-2009, but examinations revealed normal motor strength and mostly mild symptoms. (AR 264, 343, 345, 347, 685). In November 2009, orthopedist Dr. Michael Ugino, M.D. examined Plaintiff and found normal sensation, normal motor strength, and full ROM of her elbows, arms, wrists, and fingers. (AR 264-65). At medical visits in 2010, Drs. Claire Birdsong and Robert Roberts also observed that Plaintiff had normal gait, normal strength, good extremity ROM, no neurological deficits, and other normal findings. (AR 243, 290-91, 313, 341, 789, 794). Although Plaintiff alleged "10/10" low back pain at an appointment in December 2010 (AR 15, citing 336), she inconsistently reported no loss of physical activity (AR 338). Treatment notes reflected only "mildly restricted" lumbar ROM, negative straight leg raising, normal gait and strength, and no acute distress. (AR 310, 312-13).

In May 2011, Plaintiff complained of right hand pain, but EMG testing revealed no hand abnormalities. (AR 812). Plaintiff went to Dr. Ugino for the same hand symptoms in June 2011. She denied any tingling or numbness, and her examination was essentially normal. (AR 266-67). In August 2011, Dr. Roberts saw Plaintiff and found moderate back tenderness, reduced lumbar ROM, and positive straight leg raise (AR 813). He prescribed a TENS unit for Plaintiff, who reported that it relieved some back pain, and that she was able to perform her activities of daily living (AR 802).[6] At a visit to Dr. Birdsong in September 2011, Plaintiff denied any pain, but

---

[6] TENS is an acronym for "transcutaneous electrical nerve stimulation."

reported tingling in her hand and some drowsiness from medication. (AR 278-80). Neurological findings were normal. (AR 281). At another "well-woman" appointment with Dr. Birdsong in November 2011, Plaintiff reported no specific concerns. (AR 271). Plaintiff continued to receive periodic epidural steroid injections for her back. (AR 801).

In April 2012, Plaintiff saw Dr. Roberts' physician's assistant, Kerri Frey, P.A., who noted that Plaintiff had moderately-reduced lumbar ROM, some lumbar tenderness, and a positive straight leg raise on the left. (AR 393-94). Plaintiff reported that her medication was "effective," without side effects, and that she was able to perform her activities of daily living (*Id.*). In June 2012, Plaintiff complained of elbow arthritis, but examination reflected she had full ROM, normal upper arm sensation, and normal motor function (AR 374-75). Dr. Ugino's notes from October 2012 indicate that he examined Plaintiff for complaints of hand and arm pain, but found full ROM of the elbow and wrist, normal motor and sensory function of both hands, and no evidence of any significant arthritic problems to the hands. (AR 377-78). Medical notes from November 2012 indicate that Plaintiff reported being able to perform daily activities, except for opening jars. (AR 385). On that occasion, she had moderate restriction of lumbar ROM with some tenderness. (AR 386). Plaintiff also reported symptoms of restless leg syndrome, for which the medication "Requip" was prescribed (AR 789). In 2013, Plaintiff reported that her symptoms were 90% controlled with such medication (AR 818, 823, 832, 836).

**B. Whether Substantial Evidence Supports the ALJ's Weighing of the Medical Opinion Evidence and the ALJ's RFC Findings**

Plaintiff argues that the ALJ did not give appropriate weight to the opinions of several treating physicians "regarding the severity of her medical conditions as well as the restrictions and limitations caused by these conditions." (DE# 7 at 7). Based on such medical opinions, Plaintiff

challenges the ALJ's RFC findings as "erroneous." (*Id.* at 7, 17). The Commissioner has appropriately considered these overlapping arguments together. (DE# 8 at 14-20).

When evaluating medical opinions, an ALJ considers factors, including: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Dunn v. Colvin*, 607 F.App'x 264, 2015 WL 3451568 (4th Cir. June 1, 2015) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)); SSR 96–2p; 20 C.F.R. §§ 404.1527, 416.927. Generally, the more the physician presents relevant evidence to support the opinion, and the better the physician explains it, the more weight such opinion is given. 20 C.F.R. § 404.1527(d)(3). The nature and extent of a treatment relationship also affects the weight given by an ALJ. 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii).

The ALJ is not bound by a medical source's opinion, and may discount it, if there is a lack of clinical data supporting it, or if there is contrary medical evidence. See 20 C.F.R. § 404.1527; SSR 96-6p, 1996 WL 374186; *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) ("if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"); *Hunter*, 993 F.2d at 35 ("[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (treating physician's opinion is properly discounted when it is inconsistent with treatment notes and other medical evidence). "If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Boyd v. Colvin*, Case No. 0:13–cv–00638–TLW-PJG, 2014 WL 4097924, *5 (D.S.C Aug. 18, 2014). The more consistent

the opinion is with the record as a whole, the more weight the ALJ will give to it. 20 C.F.R. § 404.1527(d)(4); 20 C.F.R. § 404.1527(c)(3) (providing for greater weight where a medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings). An opinion by a physician regarding the ultimate issue of disability is never given controlling weight because such decision is reserved to the Commissioner. 20 C.F.R. § 404.1527(e).

RFC refers to the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a). The RFC assessment is based upon all of the relevant evidence, including the medical records, medical source opinions, and the person's subjective allegations and description of her own limitations. *Id.* The final responsibility for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2), (3).

Plaintiff argues that the ALJ improperly discounted Dr. Roberts' short opinion letter (AR 314), in which he opined that Plaintiff could not perform even sedentary work due to back pain and neuropathy, and that due to side effects, she could not take sufficient pain medication to treat her chronic pain. (DE# 7 at 8).[7] The ALJ explained that such opinion (a single paragraph) was conclusory and not well supported by the evidence. (AR 20). The ALJ pointed out that Dr. Roberts' opinion was inconsistent with his own notes because objective testing and his notes reflected no significant evidence of neuropathy (AR 20, 251-52, 302-13, 332, 385-396, 581-615, 798-813). Dr. Roberts had periodically examined Plaintiff and found her back tenderness and restriction of lumbar ROM to be "mild to moderate," which was inconsistent with his conclusory opinion of totally disabling symptoms. (AR 20, 386, 391, 394, 803, 809, 813, 862, 872, 877, 890). As the

---

[7] Dr. Roberts, who began treating Plaintiff on December 22, 2010 (AR 314), prescribed Nucynta (tapentadol) for Plaintiff in 2012. Such drug is an analgesic pain medication "generally regarded as a weak-moderate strength opioid." See http://www.drugs.com/nucynta.html; https://en.wikipedia.org/wiki/Tapentadol. In Plaintiff's list of current medications on 7/15/2013, she did not indicate she was currently taking it. (AR 233).

ALJ noted, Plaintiff reported that medication helped significantly and repeatedly indicated she was able to perform her activities of daily living (AR 20, 199-201, 385, 393, 802). The ALJ adequately explained his reasons for discounting such brief opinion.

Plaintiff also argues that the ALJ improperly discounted the May 29, 2014 opinion of Dr. Roberts' assistant Ms. Frey P.A., who had circled desired responses on a pre-printed form and indicated that Plaintiff was "incapacitated" due to pain (AR 902-05).[8] The Commissioner points out that a physician's assistant is not an acceptable medical source under the regulations, and that such opinion is not entitled to controlling weight. 20 C.F.R. §§ 404.1502, 404.1513(a),(d)(1) (a physician assistant is not an acceptable medical source) SSR 06-03p, 2006 WL 2329939 (S.S.A.). Under the regulations, Ms. Frey is an "other source," and her opinion is entitled to "significantly less weight" than a treating physician. 20 C.F.R. § 404.1513(d)(1); *Craig*, 76 F.3d at 591. The ALJ observed that Ms. Frey's opinion was dated 17 months *after* Plaintiff's last insured date. (AR 21, 902-05). The ALJ explained that such opinion did not include any clinical findings or supporting explanation. (*Id.*). The ALJ observed that Ms. Frey's opinion was inconsistent with her own notes, which reflected that Plaintiff could perform her activities of daily living, and was inconsistent with Dr. Roberts' and Ms. Frey's repeated findings that Plaintiff was in no acute distress and usually walked with a normal gait. (AR 21, 385-86, 391, 393-94, 803, 858, 862, 866, 872, 877, 882, 890, 893). The ALJ stated legitimate reasons for discounting this "other" opinion. (AR 21, 901-04).

Next, Plaintiff argues that the ALJ should not have given little weight to Dr. Birdsong's 5/20/2014 brief opinion. This family doctor opined that Plaintiff could not work in part due to a

---

[8] Courts have recognized the "limited probative value" of such check-the-box forms, especially where, as here, they lack well-supported explanatory notes. *See, e.g., McGlothlen v. Astrue*, 2012 WL 3647411, *6 (E.D.N.C.); *Shelton v. Colvin*, 2015 WL 1276903, *13 fn.6 (W.D.Va. Mar. 20, 2015); *Leonard v. Astrue*, 2012 WL 4404508, *4 (W.D.Va. Sept. 25, 2012); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("check-the-box assessments without explanatory comments are not entitled to great weight"); *Foushee v. Colvin*, 2014 WL 6831766, *3 (M.D.N.C. Dec. 3, 2014) (referring to it as "weak evidence").

recent shoulder surgery, which she characterized as a "shorter term problem." (AR 899).[9] Dr. Birdsong also opined that Plaintiff could not work because she would need to pace herself and change positions frequently due to pain, and because her hand/joint pain would make her "unreliable with keying."[10] The ALJ aptly pointed out that Dr. Birdsong's 2014 opinion was partly based on the effects of a shoulder surgery that occurred *after* Plaintiff's 2012 last insured date. (AR 21, 899). The ALJ also appropriately considered that Dr. Birdsong was not a specialist. (AR 21). 20 C.F.R. § 404.1527(c)(5) (the agency generally gives more weight to the opinion of a specialist). The ALJ explained that Dr. Birdsong's opinion was not consistent with the evidence through the date last insured, because such evidence indicated only sporadic complaints and largely normal findings. Moreover, the ALJ considered the opinions of the consulting examiners. (AR 20, citing Exs. 6F, 26F, 27F). Consulting examiner Dr. Bledsoe found that Plaintiff's hands, wrist, and elbow were normal (AR 359, Ex. 6F, 26F). Dr. Hegquist's examination of Plaintiff also reflected that she could perform fine and gross manipulations with her hands and had normal grip strength. (AR 765, Ex. 27F). As the ALJ observed, this further undermines Dr. Birdsong's unsupported restriction against typing. (AR 21, 358-63, 764-65, 767-70). Substantial evidence supports the ALJ's weighing of such opinion.

Plaintiff also suggests that the ALJ failed to weigh an "opinion" of Dr. Brandt, who had treated Plaintiff for some leg pain that had developed "over the last few days" in April 2007. (AR

---

[9] Plaintiff had insured status only through December 31, 2012. Moreover, a temporary post-surgery recuperation period does not meet the "duration" requirement. See 42 U.S.C. § 423(d)(1)(A) ("disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

[10] The ALJ gave "significant" weight to a separate assessment on 3/8/2013 by Dr. Birdsong (AR 428), who indicated Plaintiff had "good" ability to pay attention and concentrate, which was consistent with the consulting examiners' findings and other evidence of record. (AR 18, 20-21, citing Exs. 3F,10F, 12F, 14F, 25F, 30F). Plaintiff indicated that she was not alleging depression and that she had no limitations caused by mental symptoms. (AR 75).

478). Plaintiff is actually referring to an unsigned progress note after a steroidal injection. Such note was months prior to Plaintiff's microdiscectomy procedure. The note indicates "at this juncture I do not feel the patient can sustain gainful employment and feel that she cannot return to work" (AR 480-81, Ex. 15F). The Commissioner points out that such notation does not expressly indicate whether the author believed that Plaintiff was permanently or temporarily unable to work, but on the same date, Dr. Brandt referred Plaintiff to vocational rehabilitation (AR 486). Records from this doctor indicate that on other occasions, he gave Plaintiff a steroidal injection and advised Plaintiff to "refrain from returning to work" for only four days. (AR 488, noting Plaintiff was ambulatory at time of discharge). Moreover, his post-injection instructions indicated that Plaintiff should "resume normal activity gradually." (AR 478). Plaintiff's characterization of the 2007 treatment note as an opinion of "total disability" is over-stated. In any event, opinions on the issue of disability, regardless of their source, are not entitled to any particular weight or deference. *See* 20 C.F.R. § 404.1527(c)(3). The ultimate determination of disability is reserved solely to the Commissioner. 20 C.F.R. § 404.1527(d)(1). The ALJ's alleged failure to weigh this brief note as a "treating opinion" is harmless.

Substantial evidence supports the ALJ's weighing of the actual medical opinions and his assessment of the Plaintiff's RFC to perform a range of light work within her restrictions. The ALJ's decision was well-supported by the objective medical evidence, the medical opinions of the consulting examiners and state agency physicians, Plaintiff's daily activities, and other evidence. As the ALJ explained, Plaintiff's limited treatment history did not support a finding of total disability. Plaintiff "did well" and showed improvement after her back surgery. Although she later complained of some back pain, the evidence showed such "mild to moderate" pain was treated with medication and a TENS unit, and that she was able to engage in her daily activities. The ALJ

appropriately concluded the medical evidence did not support the severity of pain alleged by Plaintiff. *See Hutchinson v. Astrue*, 2012 WL 1267887, *8 (M.D.N.C.) ("the issue … is not whether Plaintiff's pain exists; it undoubtedly does and the ALJ so acknowledged…[the issue is whether the ALJ considered the record as a whole and properly determined] that the extent and limiting effects of that pain were not as great as [she] claimed"). The ALJ accounted for all of Plaintiff's functional limitations that were credibly established in the record when assessing her RFC for a range of light work with certain postural and environmental limitations (AR 13-21). Plaintiff's challenge to the ALJ's determination amounts to an invitation to re-weigh the evidence, which is not permissible. A reviewing court may not re-weigh the evidence or substitute its judgment for that of the Commissioner, rather, the pertinent inquiry is whether the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456.

   The ALJ's RFC was supported by substantial evidence, including the consulting examination by Dr. Bledsoe (AR 19-20, 358-63) and the opinions of the state agency physicians, Drs. Mullaney and Kukla. (AR 21, 63-65, 78-80). The ALJ discussed the fact that Dr. Bledsoe's findings (AR 20, 358-63) were generally consistent with the record, particularly Dr. Roberts' pain management notes (AR 302-56, 383-407, 470-94, 581-615, 797-813). The ALJ observed that the state agency physicians had both reviewed the medical evidence and indicated that Plaintiff could perform at least a range of light work (AR 63-65, 78-80). Such physicians are highly qualified experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s)"); *Chandler v. Comm'r*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting SSR 96-6p). The ALJ

appropriately gave significant weight to such opinions to the extent they were consistent with the RFC assessment. (AR 20-21).

Although Plaintiff further suggests that the ALJ should have based his decision on a more restrictive hypothetical question, the ALJ need only include restrictions that are supported by the record. *Johnson*, 434 F.3d at 658. The ALJ's hypothetical question limited Plaintiff to a range of light work and included all the restrictions supported by the evidence of record that the ALJ found credible. (AR 13-21). For example, although Plaintiff had complained of some hand/elbow pain, the ALJ explained that the doctors found full ROM of her upper extremities, and Plaintiff admitted being able to perform her activities of daily living (AR 21). The ALJ reasonably concluded that Plaintiff retained the ability to perform the minimal physical demands of her past "light" job as an administrative assistant within her restrictions (AR 21-22). The ALJ's step four determination is supported by substantial evidence. Plaintiff had the burden to prove that she cannot return her past relevant work, but did not meet that burden. The ALJ's decision should be affirmed.

### C. <u>Whether the ALJ's Step Two Finding is Supported by Substantial Evidence</u>

Although Plaintiff contends that the ALJ should have found restless leg syndrome and cervical spine DDD to be severe impairments at step two, this does not provide a basis for reversal. The ALJ sufficiently explained that Plaintiff's restless leg syndrome was not severe because she only made sporadic complaints of this condition, and her treatment notes show little evidence of any symptoms. (AR 12). Plaintiff reported that with medication, her symptoms were 90% improved (AR 818, 823, 832, 836). The ALJ acknowledged that Plaintiff had DDD of the cervical spine, but appropriately found it non-severe. (AR 12). The ALJ explained that there was little evidence of any neck tenderness or loss of ROM, and that Plaintiff did not make any significant mention of neck pain to her pain management provider. (*Id*.). The ALJ aptly observed that neither

consulting examiner found any cervical abnormalities. (*Id.*; AR 358-63, 764-75, 767-70). The ALJ appropriately found that these impairments were "non-severe." (AR 12).

Moreover, the relevant question is not how many severe impairments exist, but whether at least one severe impairment justifies proceeding to the next step of the sequential evaluation process. 20 C.F.R. § 404.1520. The designation of a particular impairment as severe or non-severe is not dispositive unless a decision is made at the second step of the sequential evaluation process because the ALJ considers the combined limiting effects of all of a claimant's impairments, severe and non-severe, throughout the subsequent steps of the process. 20 C.F.R. § 404.1523. Here, the ALJ proceeded through the sequential evaluation process to step four.  (AR 13-21). Moreover, a mere diagnosis is insufficient to establish disability. *Gross*, 785 F.2d at 1166 ("There must be a showing of related functional loss.").

The ALJ did not decide this case at step two. The ALJ identified several severe impairments, proceeded through the rest of the sequential process, and considered all of Plaintiff's impairments (including any non-severe ones) in determining Plaintiff's RFC. (AR 11-22). *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ "would have reached the same result" notwithstanding  the step two finding that certain impairments were non-severe); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); *Maziarz v. Sec'y of HHS*,  837 F.2d 240, 244 (6th Cir. 1987) (same).

Courts have found no reversible error where, as here, the ALJ did not find an impairment severe at step two but proceeded further in the sequential process and considered all functional limitations of the impairments when determining RFC. *See, e.g., Martinez v. Astrue*, Case No.

1:11–cv–850-CMC-SVH, 2012 WL 3580675, *10 (D.S.C. July 30, 2012), *adopted by*, 2012 WL 3582799 (D.S.C. Aug.17, 2012) ("The undersigned agrees with other courts that find no reversible error where the ALJ does not find an impairment severe at step two provided that he considers that impairment in subsequent steps."); *Washington v. Astrue*, 698 F.Supp.2d 562, 580 (D.S.C. March 17, 2010) (same); *Singleton v. Astrue*, Case No. 9:08–1982–CMC-BM, 2009 WL 1942191, *3 (D.S.C. July 2, 2009) (same).

As long as a claim is not denied at step two, it is generally unnecessary for the ALJ to have specifically found any additional alleged impairment to be severe. *See Salles v. Comm'r*, 229 F. App'x 140, 145 (3d Cir. June 26, 2007) ("even if [the ALJ] had erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless"); *Jones v. Colvin*, Case No. 13-cv-375-RBH-JDA, 2014 WL 4269156 (D.S.C. Aug. 29, 2014) (same, quoting *McCrea v. Comm'r.*, 370 F.3d 357, 360 (3d Cir. 2004)); *Conard v. Comm'r*, 2013 WL 1664370, *2 (D. Md. Apr.16, 2013) (finding harmless error where Claimant made a threshold showing of a severe impairment and "the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted [his] ability to work").

Accordingly, the Magistrate Judge recommends that the Commissioner's final decision is supported by substantial evidence and should be **AFFIRMED**.

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 10, 2017
Charleston, South Carolina

Plaintiff's attention is directed to the following **Important Notice:**